UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-00058-JPH-DML |
| | ) | |
| RUSSELL M. WEBB, JR., | ) | |
| SUSAN E. WEBB, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| INTERNAL REVENUE SERVICE OF THE | ) | |
| UNITED STATES OF AMERICA Petitioner | ) | |
| in 1:17-cv-00234-SEB-DML, | ) | |
| | ) | |
| Petitioner. | ) | |

**ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

In this lawsuit, the United States seeks to recover allegedly unpaid income tax liabilities from Russell Webb, Jr., and Susan Webb. In its motion for partial summary judgment, the United States seeks a determination that certain federal tax liens attached to all property and rights belonging to the Webbs, including their residence, as of the petition date of their bankruptcy. Dkt. [51]. The Webbs contend that they are entitled to partial summary judgment on this issue because their tax liabilities were discharged in their bankruptcy case, the IRS released the tax liens, and the United States is equitably estopped from enforcing the tax liens. Dkt. [59]. For the reasons below, the United States' motion is **GRANTED**, and the Webbs' motion is **DENIED**.

1

# I.
## Facts and Background

In 2010, the IRS filed notices of tax liens (the "Tax Liens") regarding certain taxes, interest, and penalties that the IRS assessed against the Webbs (the "Tax Liabilities"). Dkt. 51-3; dkt. 51-4; dkt. 51-5; dkt. 51-6; dkt. 51-7; dkt. 51-8; dkt. 51-9; dkt. 51-10. In 2013, the Webbs filed a bankruptcy petition (the "Petition"). Dkt. 59-2. Among the assets listed in the Webbs' Schedules and Statements was their residence located at 6061 Timber Bend Drive, Hendricks County, Indiana. Dkt. 51-1 at 4. The Webbs received a bankruptcy discharge on November 4, 2013. Dkt. 59-4. On February 10, 2014, the IRS abated the Tax Liabilities and released the Tax Liens. Dkt. 51-2 at ¶ 6; dkt. 51-3; dkt. 51-11; dkt. 51-12; dkt. 51-13. Then, in December 2016, the IRS reversed its abatement of the Tax Liabilities. Dkt. 51-2 at ¶¶ 7, 8. From 2017 to 2019, the IRS filed several revocations of its releases of the Tax Liens. Dkt. 51-14; dkt. 51-15; dkt. 51-19; dkt. 51-20; dkt. 51-21. Additional undisputed material facts are set forth throughout Part III.

The United States contends that the Tax Liens attach to the Webbs' property because the Tax Liens were unaffected by the bankruptcy. The United States also contends that although the IRS erroneously abated Tax Liabilities and released the Tax Liens, the IRS later reinstated them. The Webbs argue that Tax Liens cannot be reinstated because the Tax Liabilities were discharged; the Tax Liens were not erroneously released; even if the Tax Liens can be reinstated, the amount is limited; and the United States is equitably estopped from enforcing the liens.

## II.
## Summary Judgment Standard

The parties have filed cross-motions[1] for summary judgment under Federal Rule of Civil Procedure 56(a), so the Court takes the motions "one at a time." *American Family Mut. Ins. v. Williams*, 832 F.3d 645, 648 (7th Cir. 2016). For each motion, the Court construes all facts and draws all reasonable inferences in favor of the non-moving party. *Id.*

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

Pursuant to the Southern District of Indiana's Local Rule 56-1(b), a party opposing summary judgment must include in its response brief "a section labeled 'Statement of Material Facts in Dispute' that identifies the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment." The Webbs' response brief includes a Local Rule 56-1 Statement that claims to identify disputed material facts, dkt. 59 at 7–9, but the disputes that the Webbs identify are about the

---

[1] The Webbs argue that summary judgment should be granted in their favor, dkt. 59 at 2 n. 1, so the Court treats dkt. 59 as a cross-motion for summary judgment.

legal effect of undisputed facts.  In other words, what the Webbs dispute is the legal effect of certain actions, not whether the actions took place.

For example, the Webbs dispute the United States' assertion that the Webbs "have failed, neglected, or refused to pay in full the Alleged Obligations described." Dkt. 59 at 8.  But the Webbs have not designated evidence that creates a disputed issue of fact as to whether the IRS made the assessments, whether the Webbs received notice of the assessments, or whether the Webbs have paid the amounts assessed.  Rather, the Webbs' argument is that the assessments made by the IRS following the Webbs' bankruptcy discharge do not have the legal effect that the United States claims they do.  Similarly, the Webbs identify as a disputed material fact the United States' assertion that "[o]n or about December 27, 2016, the IRS reinstated the Webbs' liabilities [sic] tax years 2004, 2005, 2007, and 2008..."). *Id.* at 9.  But the designated evidence demonstrates that's what the IRS did, and the Webbs do not designate evidence to the contrary.  Rather, the Webbs dispute the legal effect of the IRS's reinstatement of the liabilities and argue that the reinstatement did not create a valid lien.

Such arguments do not identify an issue of material fact that would preclude summary judgment.

### III.
### Analysis

The Court's analysis begins with the broad reach of a federal tax lien.  A federal tax lien arises when "any person liable to pay any tax neglects or refuses to pay the same after demand." 26 U.S.C. § 6321.  A tax lien

4

automatically "arise[s] at the time the assessment [of a tax] is made."  26

U.S.C. § 6322.   Federal tax liens attach to "all property and rights to property"

owned by the delinquent taxpayer during the life of the lien, 26 U.S.C. § 6321,

and continue "until the liability for the amount so assessed . . . is satisfied or

becomes unenforceable by reason of lapse of time," 26 U.S.C. § 6322; *see also*

*Glass City Bank of Jeanette, Pa., v. United States*, 326 U.S. 265, 268 (1945);

*United States v. Sanabria*, 424 F.2d 1121, 1122 (7th Cir. 1970) ("... a taxing

authority's lien upon property already subjected to the lien at the time of

bankruptcy is not released or affected by the discharge...").

  The language of Section 6321 "is broad and reveals on its face that

Congress meant to reach every interest in property that a taxpayer might

have....'Stronger language could hardly have been selected to reveal a purpose

to assure the collection of taxes.'" *United States v. National Bank of Commerce*,

472 U.S. 713, 719-20 (1985) (quoting *Glass City Bank*, 326 U.S. at 267).  With

these principles in mind, the Court turns to the parties' arguments.

**A.  Pre-Bankruptcy**

***1. Undisputed material facts***

Since 1998, the Webbs have owned real property located at 6061 Timber

Bend Drive, Hendricks County, Indiana ("the Hendricks County Property").

Dkt. 59-2.  Beginning in 2007, the IRS assessed Tax Liabilities against the

Webbs.  Dkt. 51-3, dkt. 51-4, dkt. 51-5, dkt. 51-6, dkt. 51-7.  The IRS gave the

Webbs notice of the Tax Liabilities and demanded payment, but the Webbs did

not pay.   Dkt. 51-2 at 2 (¶3).  In 2010, pursuant to its authority under 26

U.S.C. §§ 6621-6623,  the IRS filed notices of the Tax Liens arising from the Tax Liabilities with the Hendricks County Recorder.  Dkt. 51-8, dkt. 51-9, dkt. 51-10.

### 2. The IRS established valid pre-Petition Tax Liens.

There is no dispute that the IRS established valid Tax Liens before the bankruptcy.  The evidence shows that the Webbs had unpaid Tax Liabilities; the IRS demanded payment from the Webbs; and the Webbs did not pay.  The Tax Liens thus automatically arose when the IRS assessed the Tax Liabilities against the Webbs.  *See* 26 U.S.C. § 6322.  Accordingly, the IRS established valid pre-Petition Tax Liens.

## B. Post-Bankruptcy

### 1. Undisputed material facts

On February 27, 2013, the Webbs filed the Petition under Chapter 7 of Title 11 of the Bankruptcy Code.  Dkt. 59-2.  The Webbs listed the Hendricks County Property as an asset on the Schedules and Statements filed in connection with their Petition, claiming $35,000 in equity as exempt from bankruptcy.  Dkt. 59-2 (Schedules C, D).  On November 4, 2013, the Webbs received a bankruptcy discharge.  Dkt. 59-4.

### 2. The Tax Liens were unaffected by the bankruptcy discharge.

Tax liens survive bankruptcy and may be enforced *in rem* even after the debtor has been discharged.  *See Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991) ("[A] bankruptcy discharge extinguishes only one mode of enforcing a claim -- namely, an action against the debtor *in personam* -- while leaving

6

intact another -- namely, an action against the debtor *in rem*.").  The Bankruptcy Code preserves "debt secured by . . . a tax lien" against exempt property such as a residence.  11 U.S.C. § 522(c)(2).

The Webbs acknowledge that "generally tax liens . . . pass through a bankruptcy undisturbed", dkt. 59 at 10, but argue that the general rule does not apply here because the Tax Liabilities were discharged in bankruptcy and the IRS released the Tax Liens.  *See id.*  While the bankruptcy discharge extinguished the Webbs' personal liability for the Tax Liabilities, it did not affect the IRS's right to seek *in rem* relief for the Tax Liabilities.  *See Johnson*, 501 U.S. at 84; *see also United States v. Buckner*, 264 B.R. 908, 913 (N.D. Ind. 2001). The Tax Liabilities continued to exist after the bankruptcy discharge and the Tax Liens remained intact.

## C. Release, Reinstatement and Reattachment of the Tax Liens

### 1. Undisputed material facts

About three months after the discharge, the IRS abated the Tax Liabilities because the IRS believed they had been discharged in bankruptcy. Dkt. 51-2 at ¶ 6.  The IRS also filed certificates with the Hendricks County Recorder releasing the Tax Liens.  Dkt. 51-11, dkt. 51-12, dkt. 51-13.

In December 2016, the IRS reversed its abatements of the Tax Liabilities. Dkt. 51-2 at ¶¶ 7, 8.  In 2017, the IRS filed revocations of its releases of the Tax Liens.  Dkt. 51-14; dkt. 51-15.  The IRS gave the Webbs notice of these revocations.  Dkt. 51-2 at ¶ 9.  The IRS also filed notices of federal tax lien with the Hendricks County Recorder, but did not timely refile notice of federal tax

7

lien with respect to tax years 2002 and 2005.  Because the IRS failed to timely
refile, those notices expired and the Tax Liens for tax years 2002 and 2005 self-
released.  Dkt. 51-16; dkt. 51-17; dkt. 51-18.  The IRS then filed additional
revocations of releases, including the 2002 and 2005 releases, dkt. 51-19; dkt.
51-20; dkt. 51-21; dkt. 51-22, as well as notices of federal tax liens for those
tax years, dkt. 51-22.

### 2. *The abatements of the Tax Liabilities were reversed.*

The United States contends that it reversed these abatements and
reinstated the Tax Liabilities.  Dkt. 51-1 at 10–14; dkt. 60 at 6–7.  The Webbs
maintain that the IRS "did not abate the [liabilities], the [liabilities] were
discharged" in bankruptcy.  Dkt. 59 at 17–18.

As discussed above, the Tax Liabilities survived the bankruptcy
discharge.  The question is whether the IRS's abatements and reversals of the
abatements were valid.  There is no statute covering the abatement of taxes
that are discharged in bankruptcy.  Dkt. 51-1 at 13 n. 1.  While the IRS could
keep the tax assessments on the books after a discharge, as a practical matter
the IRS usually abates liabilities discharged in bankruptcy for the sake of
administrative convenience.  *Id.*

The United States claims that the abatements here were made for the
sake of administrative convenience and can thus be reversed.  Dkt. 51-1 at 10–
14; dkt. 60 at 6–7.  While there is no controlling statute, the United States
argues that 26 U.S.C. § 6404, which covers abatement of tax liabilities in other
contexts, is instructive.  Section 6404(a) permits abatement of assessments

8

that were excessive, or erroneously or illegally assessed, while Section 6404(c)
covers small tax liabilities which are deemed not to justify the cost of collecting
them.  The statute is silent as to whether abatements are reversible, and the
United States does not cite any binding authority on this point.  The Court
therefore looks to non-binding authority.  *See Kroyer v. United States*, 55 F.2d
495 (Ct. Cl. 1932); *In re Becker*, 407 F.3d 89 (2d Cir. 2005); *United States v.
Buckner*, 264 B.R. 908, 914 (N.D. Ind. 2001); *Crompton-Richmond Co. v. United
States*, 311 F.Supp. 1184 (S.D.N.Y. 1970).

In *Buckner*, the IRS abated taxes based on the IRS's mistaken belief that
no pre-petition assets were available to pay the subject liabilities.  264 B.R. at
912.  The court explained, "[A] § 6404(c) abatement is not designed to reflect a
taxpayers [sic] true liability, but only the judgment of the I.R.S. that collecting
the tax would not be cost effective, and that it should therefore be removed
from the books.  Indeed, § 6404(c) simply codifies early I.R.S. administrative
practices." 264 B.R. at 914.  *Buckner* held that "the § 6404(c) abatements here
did not extinguish Buckner's debt, and the I.R.S. was free to reverse them
when it later determined that at least a portion of his taxes were collectible as a
result of the pre-petition levy." *Id.*

The facts are similar here.  The IRS abated the Tax Liabilities because it
mistakenly believed that the Tax Liabilities were uncollectible.  Later, the IRS
discovered that the discharge did not mean that the Tax Liabilities were
uncollectible since the IRS maintained its right to seek *in rem* relief for the Tax
Liabilities.  The Court finds *Buckner's* reasoning persuasive and applicable

9

here.  The IRS reversed the abatements, thereby reinstating the Tax Liabilities.

### 3.  *The IRS reinstated and reattached the Tax Liens.*

The United States argues the IRS revoked its releases of the Tax Liens, thereby reinstating them.  Dkt. 51-1 at 9–14.  The Webbs respond by again arguing that the Tax Liabilities were discharged in bankruptcy, and liens released post-discharge "cannot be reinstated as to debts that were discharged" since a creditor "cannot have a lien without an underlying liability."  Dkt. 59 at 2.  But the Tax Liabilities continued to exist after the discharge.  *See Johnson*, 501 U.S. at 84.  The question is whether the IRS could revoke its Certificates of Release of Federal Tax Lien.

A Certificate of Release of Federal Tax Lien operates to show "that the lien referred to in such certificate is extinguished."  26 U.S.C. § 6325(f)(1)(A).  Under 26 U.S.C. § 6325(f)(2), the Secretary of the Treasury is permitted to revoke a Certificate of Release of Federal Tax Lien if the release "was issued erroneously or improvidently."  Such a release may be revoked by "mailing notice of such revocation to the person against whom the tax was assessed," and "by filing notice of such revocation in the same office in which the notice of lien to which it relates was filed (if such notice had been filed)."  26 U.S.C. § 6325(f)(2).  The revocation "reinstate[s]" the lien that arose under 26 U.S.C. § 6321.  *Id.*

In the Notice of Revocation of Certificate of Release of Federal Tax Lien, an appropriate official certifies that the IRS "mistakenly issued a certificate of release" and declares that the release "is revoked and that the lien is

10

reinstated." *E.g.,* dkt. 51-14 at 1; dkt. 51-15 at 1; dkt. 51-19 at 1; dkt. 51-20 at 1; dkt. 51-21 at 1.   *See also* 26 U.S.C. § 6325(f)(2); *Municipal Trust and Sav. Bank v. U.S.*, 114 F.3d 99, 102 (7th Cir. 1997).

The United States claims it erroneously or improvidently issued the Certificates of Release of Federal Tax Lien.  Dkt. 51-1 at 9–12 (citing 26 U.S.C. § 6325(f)(2).  The Webbs argue that the United States has failed to produce evidence that the Tax Liens were erroneously or improvidently released.  Dkt. 59 at 19–20; dkt. 64 at 2.  But the United States designated multiple Revocations of Certificate of Release of Federal Tax Lien, in which the Secretary of Treasury certified that the Tax Liens were mistakenly released.  *See* dkt. 51-14; dkt. 51-15, dkt. 51-19, dkt. 51-20, dkt. 51-21.  The IRS followed the requisite procedures to revoke the releases, thereby reinstating the Tax Liens and reattaching the Tax Liens to the Webbs' pre-bankruptcy assets.  *See* 26 U.S.C. § 6325(f)(2); dkt. 51-3, dkt. 51-4, dkt. 51-5, dkt. 51-6, dkt. 51-7 (certificates of showing the taxes were assessed against the Webbs); dkt. 51-8, dkt. 51-9, dkt. 51-10; dkt. 51-16, dkt. 51-17, dkt. 51-18, dkt. 51-22 (Notice of Federal Tax Liens filed with the Hendricks County Recorder); dkt. 51-11, dkt. 51-12, dkt. 51-13 (Certificates of Release of Federal Tax Lien filed with the Hendricks County Recorder); dkt. 51-14; dkt. 51-15, dkt. 51-19, dkt. 51-20, dkt. 51-21 (Revocations of Certificates of Release of Federal Tax Lien filed with the Hendricks County Recorder).

Based on the foregoing, the IRS reinstated the Tax Liens, resulting in the reattachment of the Tax Liens to the Webbs' pre-bankruptcy assets.

### D. Limitation of Liens

#### 1. Undisputed material facts

In the bankruptcy proceedings, the IRS filed a proof of claim in the amount of $388,897.01.   Dkt. 59-3.   About three and a half years after filing that proof of claim, the IRS filed an amended proof of claim.   Dkt. 59-7.   The amended proof of claim lists a secured amount of $12,357.00 and an unsecured amount of $383,527.99.   Dkt. 59-7 at 3.

#### 2. The Tax Liens are not limited to the amount listed as secured on the IRS's amended proof of claim.

The Webbs contend that even if the Tax Liens are valid, the Tax Liens are limited to $12,357.00 (the portion of the claim characterized as secured on the amended proof of claim).   Dkt. 59 at 10–12.   The United States argues that the Tax Liens are valid and include the remaining $383,527.99 characterized as general unsecured.   Dkt. 60 at 1.

The Bankruptcy Code requires a creditor to file a proof of claim that includes the amount the debtor owes.   Fed. R. Bankr. P. 3002(a).   A pre-petition lien "that secures a claim against the debtor is not void due only to the failure of any entity to file a proof of claim."   *Id.*   The Bankruptcy Code preserves "debt secured by . . . a tax lien" against exempt property.   11 U.S.C. § 522(c)(2).

The Webbs cite several opinions[2] from other circuits for the proposition

---

[2] *See Trustees of Operating Engineers Local 324 Pension Fund v. Bourdow Contracting, Inc.*, 919 F.3d 368 (6th Cir. 2019); *EDP Medical Comput. Sys., Inc. v. United States*, 480 F.3d 621 (2d Cir. 2007); *Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525 (9th Cir. 1998); *Matter of Baudoin*, 981 F.2d 736 (5th Cir. 1993); *Giles World Mktg., Inc. v. Boekamp Mfg., Inc.*, 787 F.2d 746 (1st

that a proof of claim conclusively states the nature and the amount of a creditor's claims, and only the amount listed as secured on a proof of claim is enforceable. *See* dkt. 59 at 12–13. But those cases do not involve the issue here—whether tax liens associated with an underlying tax liability can be enforced outside of bankruptcy. Those cases also do not differentiate between secured and unsecured amounts asserted as claims by the IRS.

For example, the Webbs discuss *EDP Medical*, a case in which the IRS filed a proof of claim in a taxpayer's bankruptcy case, then later amended the proof of claim to include additional assessments. 480 F.3d at 623. The bankruptcy court issued an order allowing the IRS's amended claim, and the trustee paid the IRS the amount of the amended claim and closed the bankruptcy case. *Id.* at 623–624. Thereafter, the taxpayer filed for a refund of the tax assessment, arguing that the tax assessment was imposed by error. *Id.* at 624. The court held that the taxpayer's claim for a refund was barred because "a bankruptcy court order allowing an uncontested proof of claim constitutes a 'final judgment' and is thus a predicate for *res judicata*" as to the amount of the claim. *Id.* at 625.

*EDP Medical* addresses whether a tax assessment was enforceable in bankruptcy. That case does not deal with the issue that is relevant here—the enforceability of the Tax Liens outside of bankruptcy. *See* dkt. 1 at 6–9; dkt. 51 at 1; dkt. 51-1 at 9. Neither do the other cases that the Webbs cite as persuasive authority. *See Trustees of Operating Engineers Local 324 Pension*

_____

Cir. 1986).

*Fund v. Bourdow Contracting, Inc.*, 919 F.3d 368 (6th Cir. 2019); *Siegel v. Fed. Home Loan Mortg. Corp.,* 143 F.3d 525 (9th Cir. 1998); *Matter of Baudoin*, 981 F.2d 736 (5th Cir. 1993); *Giles World Mktg., Inc. v. Boekamp Mfg., Inc.,* 787 F.2d 746 (1st Cir. 1986).  These cases thus do not persuade the Court that their reasoning applies here.

In sum, the Webbs have not cited any controlling authority that mandates a finding that the Tax Liens are limited to the amount listed as secured on the IRS's amended proof of claim.  Consequently, the IRS is permitted to enforce the Tax Liens securing the Tax Liabilities in the full amount of $395,884.99.

### E. Equitable Estoppel

The Webbs last argue that the IRS should be equitably estopped from enforcing the Tax Liens.  Dkt 59 at 20.  The Webbs contend that the United States should be estopped from enforcing the liens because three years elapsed between when the IRS released the Tax Liens and when the IRS revoked the releases and reinstated the Tax Liens.  *Id.*  The United States argues that under the applicable test, the IRS should not be estopped.  Dkt. 60 at 7.  The United States also contends that lapse of time is not a factor in the equitable estoppel analysis but is a laches argument, which applies only in a limited set of circumstances not applicable here.  *Id.*

 "[E]quitable estoppel against the government is disfavored and is rarely successful." *Gibson v. West*, 201 F.3d 990, 994 (7th Cir. 2000).  The traditional elements of equitable estoppel are: (1) misrepresentation by the party against

14

whom estoppel is asserted; (2) reasonable reliance on that misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel. *Kennedy v. United States*, 965 F.2d 413, 417 (7th Cir. 1992); *see also Edgewater Hosp., Inc. v. Bowen*, 857 F.2d 1123, 1138 (7th Cir. 1988). When the government is a party, one must also establish affirmative misconduct on the part of the government. *Id.*; *Gibson*, 201 F.3d at 994. Affirmative misconduct is "more than mere negligence . . . . It requires an affirmative act to misrepresent or mislead." *Id.* (internal citations omitted).

Here, the Webbs have not demonstrated that the IRS's actions constitute affirmative misconduct. There is no designated evidence showing the IRS released the Tax Liens to misrepresent or mislead the Webbs. For these reasons, the Webbs' estoppel argument must fail.

## IV.
## Conclusion

The United States' motion for partial summary judgment is **GRANTED**. Dkt. [51]. The Webbs' cross-motion for partial summary judgment is **DENIED**. Dkt. [59].

**SO ORDERED.**

Date: 9/14/2020

James Patrick Hanlon
United States District Judge
Southern District of Indiana

15

Distribution:

Weston E. Overturf
MATTINGLY BURKE COHEN & BIEDERMAN LLP
wes.overturf@mbcblaw.com

Bradley A. Sarnell
U.S. DEPARTMENT OF JUSTICE, TAX DIVISION
bradley.a.sarnell@usdoj.gov